THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JACKIE D. HUNDLEY, Defendant-Appellee.

Third District    Nos. 3—91—0250 through 3—91—0252 cons.

Opinion filed April 22, 1992.—Rehearing denied May 28, 1992.

Samuel Naylor VI, State's Attorney, of Carthage (John X. Breslin and Jay P. Hoffmann, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Capps, Ancelet & Stoverink, of Carthage (Albert V. Ancelet, of counsel), for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The defendant, Jackie D. Hundley, was charged with the offense of unlawful possession of a controlled substance (Ill. Rev. Stat. 1987, ch. 56½, par. 1402). Cocaine was found in Hundley's unattended automobile by an Illinois State trooper during a warrantless inventory search. Hundley filed a motion to suppress evidence which was granted by the trial court. The State appeals. We affirm.

On October 1, 1988, Hundley was involved in a one-car accident near the intersection of U.S. Highway 136 and Fountain Creek Road in Hancock County. Hundley's vehicle struck a utility pole near the highway and came to rest in an adjacent ditch. Trooper Anthony Grace investigated the accident. He discovered Hundley's unattended vehicle was locked and severely damaged from the accident. Hundley was not present. Trooper Grace called a tow truck to remove the vehicle from the ditch. The trooper opened the automobile with a "slim jim." The trooper testified the vehicle was opened so the transmission could be shifted to avoid further damage to the vehicle when it was towed from the ditch.

An inventory search of the contents of the vehicle was performed by the trooper. He found a closed cigarette case which he opened. Inside the case he found cigarettes and a snorting tube containing cocaine residue. The trooper testified that he opened the cigarette case because in his experience he had found women often put their driver's licenses and money in these containers. No purse or other valuables were found in Hundley's vehicle. Trooper Grace

testified he prepared an inventory list pursuant to State Police policy and gave copies of it to his commanding sergeant and the tow truck operator. No inventory form was ever introduced into evidence at the suppression hearing. At the conclusion of the hearing, the State admitted into evidence the Division of State Troopers' General Order DST ENF 13 (General Order), which contains the policy and procedure to be followed during a warrantless inventory search of an impounded vehicle.

In presenting a motion to suppress evidence, the defendant has the burden of proving the search and seizure were unlawful. (*People v. Janis* (1990), 139 Ill. 2d 300, 565 N.E.2d 633.) A trial court's decision on a motion to suppress evidence will generally not be reversed unless it is manifestly erroneous. At a hearing on a motion to suppress, it is the trial court's function to determine the credibility of the witnesses, the weight to be given their testimony and the inferences to be drawn from the evidence. *People v. Galvin* (1989), 127 Ill. 2d 153, 535 N.E.2d 837.

■ An inventory search is a judicially created exception to the warrant requirement of the fourth amendment. (*Illinois v. Lafayette* (1983), 462 U.S. 640, 77 L. Ed. 2d 65, 103 S. Ct. 2605.) Three requirements must be satisfied for a valid warrantless inventory search of a vehicle: (1) the original impoundment of the vehicle must be lawful (*South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092); (2) the purpose of the inventory search must be to protect the owner's property and to protect the police from claims of lost, stolen, or vandalized property and to guard the police from danger (*Opperman*, 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092); and (3) the inventory search must be conducted in good faith pursuant to reasonable standardized police procedures and not as a pretext for an investigatory search. *Colorado v. Bertine* (1987), 479 U.S. 367, 93 L. Ed. 2d 739, 107 S. Ct. 738.

■ Initially, we note Trooper Grace lawfully impounded Hundley's vehicle. The vehicle skidded off the roadway and had sheared off a utility pole. The fallen power line created a hazard which impeded the flow of traffic. Hundley's vehicle was locked and unattended until it was towed from the ditch. The Illinois Vehicle Code (the Code) (Ill. Rev. Stat. 1989, ch. 95½, par. 1—100 *et seq.*) authorizes the removal of a vehicle under these circumstances. According to section 4—203(d) of the Code:

> "When an abandoned, unattended, wrecked, burned or partially dismantled vehicle is creating a traffic hazard because of its position in relation to the highway or its physical appear-

ance is causing the impeding of traffic, its immediate removal from the highway or private property adjacent to the highway by a towing service may be authorized by a law enforcement agency having jurisdiction." Ill. Rev. Stat. 1989, ch. 95½, par. 4—203(d).

Trooper Grace was responsible for the safety of Hundley's vehicle and its contents since Hundley was not at the scene of the accident.

After the trooper ordered the vehicle removed from the ditch, it was then towed to an unguarded storage facility. Hundley's vehicle was then exposed to possible theft or vandalism because it was parked at an unguarded storage facility. Under these circumstances, it was reasonable for Trooper Grace to inventory the contents of Hundley's vehicle. When vehicles are impounded, police departments generally follow a standardized procedure for inventorying the contents of the impounded vehicle. Such standardized police procedures were developed in response to three distinct needs: (1) the protection of the owner's property; (2) the protection of the police against claims or disputes over lost or stolen property; and (3) the protection of the police from potential danger. (*Opperman,* 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092.) Section 13—3 of the General Order enumerates the standardized Illinois State Police objectives regarding warrantless inventory searches of impounded vehicles. Section 13—3 of the General Order provides in pertinent part:

"*OBJECTIVES*

(a) To safeguard property in those cases where the actual owner or person in charge of such property is for any reason unable to provide ordinary care and protection for such property.

(b) To protect those persons who actually remove and take custody of vehicles/boats towed by authority of the Division of State Troopers.

(c) To protect the interests of the Division of State Troopers."

Based upon our review of the record, we find Trooper Grace's warrantless inventory search of Hundley's impounded vehicle met the reasonable objectives of the General Order. The inventory search was undertaken for the purpose of protecting Hundley's property and to discourage claims against the State Police for theft or vandalism. However, we clearly find from the record that Trooper Grace did not open the closed cigarette case pursuant to a standardized State Police procedure. The General Order was *silent* concerning the opening of

closed containers by State troopers during a warrantless inventory search of an impounded vehicle.

The trial court suppressed the evidence because Trooper Grace did not produce the required inventory form. The trooper testified that he completed the inventory form, but it was not introduced into evidence at the suppression hearing. The trial court ruled as follows:

> "I believe the Supreme Court in the *Bertine* case is saying that since we are dealing with another exception to an individual's Fourth Amendment rights, the officer must dot the i's and cross the t's so that the trial court does not have to determine the officer's motives in connection with the search."

We believe the issue in this instant matter is *not* whether Trooper Grace prepared an inventory list pursuant to the General Order, but whether the trooper had legal authority to open Hundley's closed cigarette case. While we affirm the trial court's order suppressing the evidence, we do not agree with the trial court's analysis of the law governing warrantless inventory searches of impounded vehicles. The trial court was not correct in suppressing the evidence merely because Trooper Grace did not produce an inventory list at the suppression hearing. Instead, the trial court's inquiry should have been whether there were any existing standardized police procedures governing the opening of closed containers found within lawfully impounded vehicles.

We hold that *Bertine* allows police to open all closed containers during a warrantless inventory search of an impounded vehicle where there are standardized police procedures which require the opening and inventorying of the contents of all closed containers.

In *Bertine,* the defendant was stopped for driving under the influence of alcohol. After the defendant was taken into custody, a police officer, acting pursuant to standardized police procedure, inventoried the defendant's van. The officer discovered a closed backpack, which he opened. Inside the backpack the officer found various containers holding controlled substances, cash, and cocaine paraphernalia.

The police officer in *Bertine* followed a reasonable standardized police procedure which required the officer to open all closed containers during an inventory search of an impounded vehicle. The Supreme Court in *Bertine* stated that police should be given limited discretion in opening closed containers discovered within lawfully impounded vehicles, "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." (*Bertine,* 479 U.S. at 375, 93 L. Ed. 2d at 748, 107 S. Ct. at 743.) Justice Blackmun cautioned that the police

should not be allowed discretion to turn a warrantless inventory search of an impounded vehicle into "a purposeful and general means of discovering evidence of crime." *Bertine*, 479 U.S. at 376, 93 L. Ed. 2d at 749, 107 S. Ct. at 743 (Blackmun, J., concurring).

■ In the instant appeal, we note the General Order of the Illinois State Police was silent regarding the opening of closed containers found during a warrantless inventory search of an impounded vehicle. While the General Order requires a trooper to inventory areas of an impounded vehicle where people normally store their property, it *fails* to require a trooper to open closed containers. Sections 13—2 and 13—4(a)(2) of the General Order provide in relevant part:

"13—2 *POLICY*

*** A physical inventory shall be made of all vehicles towed, except when the vehicle is towed at the owner's request.
***

13—4 *Procedure*

(a) Forms
***

(2) An examination and inventory of the contents of all vehicles/boats towed or held by authority of Division personnel shall be made by the officer who completes the Tow-In Recovery Report. This examination and inventory shall be restricted to those areas where an owner or operator would ordinarily place or store property or equipment in the vehicle/boat; and would normally include front and rear seat areas, glove compartment, map case, sun visors, and trunk and engine compartments."

In *People v. Lear* (1991), 217 Ill. App. 3d 712, 577 N.E.2d 826, the defendant was stopped for speeding when the trooper was informed the defendant's driver's license was suspended. The defendant's vehicle was immediately towed, impounded and searched. The trooper discovered a closed drawstring bag in the trunk. Upon opening the bag, the trooper discovered two loaded handguns. The defendant was charged with possession of a firearm without the requisite firearm owner's identification card (Ill. Rev. Stat. 1989, ch. 38, par. 83—2) and unlawful use of weapons (Ill. Rev. Stat. 1989, ch. 38, par. 24—1(a)(4)). The defendant moved to suppress the introduction of the gun into evidence. The trial court granted his motion.

The court in *Lear* affirmed the trial court's suppression of the evidence found inside the closed bag. In *Lear*, the court followed *Bertine* and concluded that when the trooper opened the closed drawstring

bag, he violated the defendant's fourth amendment rights. The court reasoned the guns were properly suppressed absent testimony that the inventory search was conducted pursuant to a standardized police procedure which required the opening and inventorying of all closed containers in every impounded vehicle. *Lear*, 217 Ill. App. 3d at 714-15, 577 N.E.2d at 828.

According to the Supreme Court in *Florida v. Wells* (1990), 495 U.S. 1, 109 L. Ed. 2d 1, 110 S. Ct. 1632, the police should be given discretion to open closed containers when the police are unable to ascertain the contents of the closed containers *and* standardized police procedure requires the closed containers to be opened for further inventory. In *Wells*, the defendant was stopped for driving under the influence of alcohol. The defendant agreed to take a breathalyzer test and permitted the trooper to inventory the trunk of his vehicle. The trooper forced open a locked suitcase found in the trunk of the defendant's vehicle. The trooper discovered in the suitcase a substantial quantity of marijuana. The Supreme Court in *Wells* reaffirmed its earlier holding in *Bertine*. (*Wells*, 495 U.S. at 3, 109 L. Ed. 2d at 6, 110 S. Ct. at 1635.) The Supreme Court in *Wells* once again affirmed the validity of warrantless inventory searches which follow a standardized police procedure requiring the opening of all closed containers in impounded vehicles. However, the Florida State Police in *Wells*, just like the Illinois State Police here, did not have *any* standardized procedure regarding the opening of closed containers discovered during a warrantless inventory search of an impounded vehicle.

The Supreme Court stated:

> "A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself." (*Wells*, 495 U.S. at 4, 109 L. Ed. 2d at 6, 110 S. Ct. at 1635.)

The Supreme Court in *Wells* held the warrantless inventory search of the locked suitcase did not satisfy the fourth amendment because there was no standardized police procedure governing the opening and inventory of closed containers found in impounded vehicles. *Wells*, 495 U.S. at 5, 109 L. Ed. 2d at 7, 110 S. Ct. at 1635.

Here, we find Trooper Grace opened the closed cigarette case using his own discretion without the benefit of a standardized police procedure requiring the opening of all closed containers. For a valid warrantless inventory search of an impounded vehicle, it is not incumbent upon the Illinois State Police to "dot all the i's and cross all the t's." Police are allowed reasonable discretion in a warrantless inven-

tory search of an impounded vehicle to open closed containers *provided* they act according to a standardized police procedure which mandates the opening of all closed containers and the inventorying of their contents in every impounded vehicle.

For the reasons indicated, the judgment of the circuit court of Hancock County is affirmed.

Affirmed.

BARRY, P.J., and SLATER, J., concur.