(No. 73925.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JACKIE D. HUNDLEY, Appellee.

*Opinion filed August 26, 1993.*

FREEMAN, J., dissenting.

HARRISON, J., joined by BILANDIC, J., also dissenting.

Roland Burris, Attorney General, of Springfield, and Samuel Naylor, State's Attorney, of Carthage (Norbert

J. Goetten, John X. Breslin and J. Paul Hoffman, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Albert V. Ancelet, of Capps, Ancelet & Stoverink, of Carthage, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

The defendant, Jackie D. Hundley, was charged, in the circuit court of Hancock County, with the offense of unlawful possession of a controlled substance. (Ill. Rev. Stat. 1987, ch. 56½, par. 1402.) Cocaine was found in Hundley's unattended automobile by an Illinois state trooper during a warrantless inventory search. Hundley filed a motion to suppress evidence, which was granted by the trial court. The appellate court affirmed. (227 Ill. App. 3d 1056.) We reverse.

On October 1, 1988, at approximately 10 p.m., State Trooper Anthony Grace was on routine patrol when he came across what appeared to have been a one-car accident. The scene was near the intersection of U.S. Highway 136 and Fountain Creek Road in Hancock County, Illinois. Trooper Grace observed a 1986 blue Mercury automobile in a ditch. A utility pole had been broken off and a part of it was stuck under the car. Downed power lines were lying across the highway. Hundley, the owner and operator of the car, was not present. From an examination of the scene, the trooper was able to conclude that the car had left the traveled portion of U.S. 136, crossed an embankment, crashed through a fence and come to rest in the ditch after colliding with and breaking off a utility pole. Closer inspection of the car revealed that the doors were locked.

Trooper Grace called for a tow truck to remove the vehicle. He then used a mechanical device called a "slim

jim" to open the car's locked door. He testified that this was done so that he could shift the transmission into neutral to avoid towing damage.

Since defendant was not present, Trooper Grace conducted an inventory search of the car prior to its removal by the tow truck to an unguarded storage facility. In the course of his search, he found a closed, snap-top cigarette case which he opened. Inside the cigarette case, he found a snorting tube containing cocaine. The trooper testified that he opened the cigarette case because in his experience he had found women often put their drivers' licenses and money in these containers. No purse or other valuables were found in the vehicle. Trooper Grace testified that he prepared an inventory list pursuant to State police policy and gave copies of it to his commanding sergeant and the tow truck operator. No inventory form was introduced into evidence at the suppression hearing. At the conclusion of the hearing, the court received into evidence the State police general order which contains the policy and procedure to be followed during a warrantless inventory search of an impounded vehicle. Identified as section 13—4(a)(2) of the General Order of the Illinois State Police, it provides:

> "An examination and inventory of the contents of all vehicles/boats towed or held by authority of Division personnel shall be made by the officer who completes the Tow-In Recovery Report. This examination and inventory shall be restricted to those areas where an owner or operator would ordinarily place or store property or equipment in the vehicle/boat; and would normally include front and rear seat areas, glove compartment, map case, sun visors, and trunk and engine compartments."

Trooper Grace's authority for ordering the car towed and impounded is grounded in statute. Ill. Rev. Stat. 1987, ch. 95½, par. 4—203(d).

An inventory search is a judicially created exception to the warrant requirement of the fourth amendment. (*Illinois v. Lafayette* (1983), 462 U.S. 640, 77 L. Ed. 2d 65, 103 S. Ct. 2605.) Three requirements must be satisfied for a valid warrantless inventory search of a vehicle: (1) the original impoundment of the vehicle must be lawful (*South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092); (2) the purpose of the inventory search must be to protect the owner's property and to protect the police from claims of lost, stolen, or vandalized property and to guard the police from danger (*Opperman*, 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092); and (3) the inventory search must be conducted in good faith pursuant to reasonable standardized police procedures and not as a pretext for an investigatory search (*Colorado v. Bertine* (1987), 479 U.S. 367, 93 L. Ed. 2d 739, 107 S. Ct. 738).

In *Florida v. Wells* (1990), 495 U.S. 1, 109 L. Ed. 2d 1, 110 S. Ct. 1632, the Supreme Court again affirmed the validity of warrantless inventory searches which follow a standardized police procedure requiring the opening of closed containers in impounded vehicles. Differing on its facts from the instant case, however, in *Wells* the defendant had been stopped for driving under the influence of alcohol and the trooper forced open a locked suitcase in the trunk of the car. Defendant Wells had given permission to inventory the trunk of the car but had not given permission to the officer to force open the locked suitcase.

The Court held that since the Florida Highway Patrol had no policy whatsoever with respect to the opening of closed containers, the marijuana which was found in the locked suitcase was properly suppressed. The Court stated, however, that police should be allowed sufficient latitude to determine whether a particular container

should or should not be opened in light of the nature of the search and characteristics of the container itself.

Considering the applicable law as applied to the facts of the instant case, we believe that the general order of the Illinois State Police is adequate to the situation. More particularly, based on the unique circumstances of the towing of an unattended vehicle following a wreck, we believe that the officer's decision to open the cigarette case, because in his experience he had found women often put their drivers' licenses and money in these containers, was a reasonable exercise of judgment on the officer's part.

Accordingly, the judgments of the appellate court and circuit court are reversed. The cause is remanded to the circuit court for further proceedings.

*Judgments reversed;*
*cause remanded.*

JUSTICE FREEMAN, dissenting:

I conclude that the warrantless inventory search of defendant's automobile was not sufficiently regulated to satisfy the fourth amendment to the United States Constitution. (U.S. Const., amend. IV.) Accordingly, I respectfully dissent.

## FACTS

The majority opinion correctly recites the following facts. On the night of October 1, 1983, an Illinois State trooper conducted a warrantless inventory search of defendant's unattended automobile. During the search, the trooper found a closed cigarette case. He opened the case and found cocaine. 156 Ill. 2d at 137.

The record contains the following additional facts. Defendant's friend, Tom Main, whom the trooper also knew, was present at the accident scene. The trooper did not relinquish possession of defendant's automobile to

Main because defendant and not Main was the car's registered owner. The next morning, defendant and Main went to the storage facility and attempted to retrieve her car.

## CONTROLLING PRINCIPLES

The applicable legal principles are clear. "The central purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *South Dakota v. Opperman* (1976), 428 U.S. 364, 377, 49 L. Ed. 2d 1000, 1009-10, 96 S. Ct. 3092, 3101 (Powell, J., concurring).

"[I]nventories and similar intrusions into vehicles for purposes other than seizing evidence of crime *are* searches within the meaning of the Fourth Amendment." (Emphasis in original.) (3 W. LaFave, Search & Seizure §7.4, at 96 (2d ed. 1987).) Routine inventory searches of automobiles are generally constitutional because an individual's diminished expectation of privacy in an automobile is outweighed by three governmental interests: protection of the police from danger; protection of the police against claims and disputes over lost or stolen property; and protection of the owner's property while it remains in police custody. *Opperman*, 428 U.S. at 378, 49 L. Ed. 2d at 1010, 96 S. Ct. at 3101 (Powell, J., concurring).

However, a warrantless inventory search of an automobile must not be unrestrained. The search must be conducted in accordance with established police department rules or policy. (*Opperman*, 428 U.S. at 379-80, 49 L. Ed. 2d at 1011-12, 96 S. Ct. at 3102 (Powell, J., concurring).) Indeed, this is the rationale for the "inventory exception" to the fourth amendment's warrant requirement. Justice Powell explained in *Opperman* as follows:

"Inventory searches, however, are not conducted in order to discover evidence of crime. *The officer does not make a*

*discretionary determination to search based on a judgment that certain conditions are present.* Inventory searches are conducted in accordance with established police department rules or policy and occur *whenever* an automobile is seized." (Emphasis added.) (*Opperman*, 428 U.S. at 383, 49 L. Ed. 2d at 1013-14, 96 S. Ct. at 3104 (Powell, J., concurring).)

Thus, based on *Opperman*, "[w]hat is needed in the vehicle inventory context *** is not probable cause but rather a regularized set of procedures which adequately guard against arbitrariness." 3 W. LaFave, Search & Seizure §7.4(a), at 109 (2d ed. 1987).

These principles apply to the opening of a closed container during a vehicle inventory search. In *Colorado v. Bertine* (1987), 479 U.S. 367, 93 L. Ed. 2d 739, 107 S. Ct. 738, the United States Supreme Court held that a police officer may open a closed container while conducting a routine inventory search of an impounded vehicle. The Court emphasized that police department procedures in that case *mandated* the opening of closed containers. *Bertine*, 479 U.S. at 374 n.6, 93 L. Ed. 2d at 747 n.6, 107 S. Ct. at 742 n.6.

Further, Justice Blackmun, who participated in the majority in *Bertine*, wrote "separately to underscore the importance of having such inventories conducted *only* pursuant to standardized police procedures." (Emphasis added.) (*Bertine*, 479 U.S. at 376, 93 L. Ed. 2d at 748, 107 S. Ct. at 743 (Blackmun, J., concurring, joined by Powell and O'Connor, JJ.).) Thus, *Bertine* "establishes that with respect to inventory of closed containers the police *must* have no discretion whatsoever *** and thus it may be concluded that a *total* absence of police discretion on this aspect of inventory is mandated as a Fourth Amendment matter." (Emphasis in original.) 3 W. LaFave, Search & Seizure §7.4, at 28 (2d ed. Supp. 1993).

The recent case of *Florida v. Wells* (1990), 495 U.S. 1, 109 L. Ed. 2d 1, 110 S. Ct. 1632, did not alter these principles. In *Wells,* the Court upheld the suppression of evidence found in a closed container during a vehicle inventory search. The Court held as follows:

> "In the present case, the Supreme Court of Florida found that the Florida Highway Patrol had no policy whatever with respect to the opening of closed containers encountered during an inventory search. We hold that absent such a policy, the instant search was not sufficiently regulated to satisfy the Fourth Amendment ***." *Wells,* 495 U.S. at 4-5, 109 L. Ed. 2d at 7, 110 S. Ct. at 1635.

These Supreme Court decisions can be summarized as follows:

> "Standardized criteria or an established routine governing inventory searches must limit an officer's discretion in two ways. First, it must limit the officer's discretion regarding *whether* to search a seized vehicle. [Citations.] Second, the pre-existing criteria or routine must limit an officer's discretion regarding the *scope* of an inventory search, particularly with respect to the treatment of closed containers. [Citations.]" (Emphasis in original.) *United States v. Salmon* (3d Cir. 1991), 944 F.2d 1106, 1120.

Our appellate court correctly summed up these fourth amendment concerns when it held that "[t]he one thread common to all valid warrantless inventory searches is that the search was predicated on a standard police procedure." *People v. Lear* (1991), 217 Ill. App. 3d 712, 714.

However, the majority opinion in *Wells* included the following *dictum*:

> "A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself." *Wells,* 495 U.S. at 4, 109 L. Ed. 2d at 6, 110 S. Ct. at 1635.

Four justices concurred in the judgment. They objected to the above-quoted *dictum*. (See separate opinions of Brennan, J. (joined by Marshall, J.), Blackmun, J., and Stevens, J.) Indeed, Justices Brennan and Blackmun each feared that "this dictum will be relied on by lower courts in reviewing the constitutionality of particular inventory searches." (*Wells,* 495 U.S. at 8, 109 L. Ed. 2d at 9, 110 S. Ct. at 1637 (Brennan, J., concurring, joined by Marshall, J.); see *Wells,* 495 U.S. at 11, 109 L. Ed. 2d at 11, 110 S. Ct. at 1639 (Blackmun, J., concurring).) This exact fear has been fulfilled by the majority in the present case.

## APPLICATION OF LAW TO FACTS

Based on these principles, I conclude that the warrantless inventory search in the present case was not sufficiently regulated to satisfy the fourth amendment. The majority upholds the search because: (1) Illinois State Police General Order §13—4(a)(2) (general order) was "adequate to the situation," and (2) the trooper's opening of defendant's closed cigarette case constituted "a reasonable exercise of judgment on the officer's part." (156 Ill. 2d at 139.) Neither of these reasons validates this search.

### The General Order

The general order (156 Ill. 2d at 137) does not save this search. This provision is very similar to the Florida Highway Patrol policy at issue in *Wells*. As with the general order, the Florida Highway Patrol policy did not specifically refer to closed containers, but rather required a general inventory of articles in the vehicle. (*State v. Wells* (Fla. 1989), 539 So. 2d 464, 469, *aff'd* (1990), 495 U.S. 1, 109 L. Ed. 2d 1, 110 S. Ct. 1632.) As with the Florida Highway Patrol policy, the general or-

der does not limit an officer's discretion regarding the scope of an inventory search, particularly with respect to the treatment of closed containers. (*Salmon*, 944 F.2d at 1120.) The Florida Highway Patrol policy did not justify the opening of a closed container during the automobile inventory search in *Wells*. Likewise, the general order should not justify such conduct here. Accord *Salmon*, 944 F.2d at 1121 ("Based on the lack of evidence of any criteria or established routine regarding the scope of an inventory search, we conclude that the searching officers had impermissible discretion regarding the scope of the inventory, particularly as to the treatment of closed containers").

I note that in *United States v. Wilson* (7th Cir. 1991), 938 F.2d 785, the United States Court of Appeals for the Seventh Circuit recently held that the general order sufficiently limits the discretion of police officers to satisfy the fourth amendment. The court reasoned that requiring the "examination and inventory of the contents" of an inventoried vehicle establishes the policy that closed containers must be opened. *Wilson*, 938 F.2d at 789-90.

I believe that the Federal appeals court's interpretation of the general order was erroneous for at least two reasons. First, the *Wilson* court concluded that the general order was distinguishable from the Florida Highway Patrol policy because the "Florida State Police admittedly had no standard policy governing inventory searches while the State of Illinois did." (*Wilson*, 938 F.2d at 790.) However, the policy in *Wells* and the general order are essentially the same. Thus, the result in *Wells* should obtain here.

Second, the *Wilson* court's reasoning, that a general examination requirement necessarily requires the opening of closed containers, is flawed. The Oregon Court of Appeals explained as follows:

"What [this reasoning] fails to recognize is that the 'general nature' of the procedure is precisely what makes it defective. To approve a policy *because* it is so general that an officer must look everywhere he can think of flies in the face of the requirement that the inventory be 'conducted according to standardized criteria,' [citation], or 'established routine.' " (*State v. Willhite* (1992), 110 Or. App. 567, 574, 824 P.2d 419, 422.)

Further, Professor LaFave specifically notes that the reasoning of the *Wilson* court "is open to question." (3 W. LaFave, Search & Seizure §7.4, at 28-29 (2d ed. Supp. 1993).) Of course, the *Wilson* decision is not binding on Illinois courts. See *People v. Kokoraleis* (1989), 132 Ill. 2d 235, 293.

## Police Discretion

The majority upholds the warrantless inventory search in the present case also because the trooper's opening of defendant's closed cigarette case constituted "a reasonable exercise of judgment on the officer's part." However, the very essence of an inventory search is that a police officer does not exercise any discretion. The officer does not decide to search based on his or her judgment that certain conditions are present. (*Opperman*, 428 U.S. at 383, 49 L. Ed. 2d at 1013-14, 96 S. Ct. at 3104 (Powell, J., concurring).) A police officer cannot be given complete, if any, discretion in choosing whether to search or not to search closed containers found during an inventory search. See generally *Wells*, 495 U.S. at 10, 109 L. Ed. 2d at 10, 110 S. Ct. at 1638 (Blackmun, J., concurring).

The inventory search in the present case did not meet fourth amendment requirements. The trooper did *not* open defendant's closed cigarette case based on *any* standard police policy, including the general order. Rather, he testified that he acted based on "his experi-

ence." The trooper's personal experience does not constitute a standard police procedure. (See *United States v. Kordosky* (7th Cir. 1990), 909 F.2d 219, 221, *on remand* (1991), 921 F.2d 722 (appeals court remanded case to district court to determine whether the "standard practice" of a police officer regarding inventory searches constituted official police policy or merely his personal judgment).) I agree with the result in *Willhite*, where the court rejected an officer's decision to search behind a car seat, a decision which "made sense" to the officer based on his personal experience. The court concluded: "That is precisely the kind of individual discretion that a policy for inventories has to preclude. The seized items should have been suppressed." *Willhite*, 110 Or. App. at 574, 824 P.2d at 422.

I lastly note that the State does not and, based on the evidence, could not contend that defendant's automobile was abandoned in the context of the fourth amendment. Abandoned property lies outside of the zone of protection offered by the fourth amendment. (*People v. Dorney* (1974), 17 Ill. App. 3d 785, 787; see *People v. Arnett* (1991), 217 Ill. App. 3d 626, 632.) Because fourth amendment concerns are not applicable when an automobile is abandoned, it may be seized by the police without a warrant and examined with no limitations on the scope, intensity, or objectives of the examination. The automobile and its contents may be retained for use as evidence. (*Duncan v. State* (1977), 281 Md. 247, 263, 378 A.2d 1108, 1118.) Whether property is abandoned is a question of fact requiring an examination of the intent and actions of the defendant. The party asserting abandonment bears the burden of proof by clear, unequivocal, and decisive evidence. *Dorney*, 17 Ill. App. 3d at 787-88.

The record in the present case shows that the windows of defendant's car were rolled up, the doors were locked, and the keys were not in the ignition. Also,

Main, who was defendant's friend, was present during the impoundment and defendant attempted to take possession of her automobile the next morning. These facts would not support the contention that defendant intended to abandon her automobile in the context of the fourth amendment.

As in *Wells*, the warrantless inventory search in the present case was not sufficiently regulated to satisfy the fourth amendment. I would affirm the appellate court. Accordingly, I respectfully dissent.

JUSTICE HARRISON, also dissenting:

The majority's disposition runs directly counter to the holding of *Florida v. Wells* (1990), 495 U.S. 1, 109 L. Ed. 2d 1, 110 S. Ct. 1632. There, as here, a general policy on inventory searches was in effect, or at least the Florida Supreme Court assumed that it was. (*State v. Wells* (Fla. 1989), 539 So. 2d 464, 469.) What made the inventory search constitutionally infirm in the view of both the State court (*Wells*, 539 So. 2d at 469) and the United States Supreme Court (*Wells*, 495 U.S. at 4-5, 109 L. Ed. 2d at 7, 110 S. Ct. at 1635) was that the policy did not specifically address the opening of closed containers. That is precisely the problem here. Closed containers are not mentioned anywhere in the general order promulgated by our State police for inventory searches.

The majority attempts to distinguish this case from *Wells* on the grounds that the search here involved an unattended car towed after a wreck, whereas the search in *Wells* came after the defendant's car was impounded following his arrest for drunk driving and the arresting officer directed employees of the impoundment facility to unlock a locked suitcase found in the trunk. I agree that these factual differences exist, but am at a loss to understand their legal significance. Nothing in *Wells'* analysis turns on the circumstances giving rise to the inventory

search. In determining whether police have the right to open closed containers found in the course of an inventory search, the threshold inquiry is whether a policy exists which specifically authorizes the procedure. Absent such a policy, opening closed containers during an inventory search violates the fourth amendment (*Wells*, 495 U.S. at 5, 109 L. Ed. 2d at 7, 110 S. Ct. at 1635), regardless of why the inventory search was originally undertaken.

The majority is also incorrect in suggesting that the search here was valid because it involved "a reasonable exercise of judgment on the officer's part." In *Wells*, the court did hold that police are not required to have mechanistic "all or nothing" policies which call for all closed containers to be opened during an inventory search or else prohibit any containers from being opened. Rather, they are free to fashion policies which allow officers to exercise discretion in determining "whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself." (*Wells*, 495 U.S. at 4, 109 L. Ed. 2d at 6, 110 S. Ct. at 1635.) In this case, however, no such policy existed. As I just noted, there was no policy on closed containers at all. Without such a policy, whether the police officer's judgment might otherwise be regarded as "reasonable" is wholly immaterial.

For the foregoing reasons, I believe the judgments of the circuit and appellate courts should be affirmed.

JUSTICE BILANDIC joins in this dissent.