2023 IL App (1st) 210193-U

SIXTH DIVISION
August 31, 2023

1-21-0193

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No.  19 CR 1268301 |
| | ) | |
| DEON STROUD, | ) | |
| | ) | Honorable |
| Petitioner-Appellant. | ) | James B. Linn, |
| | ) | Judge Presiding. |

_____

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Mikva and Justice C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court did not err in denying defendant's motion to suppress.

¶ 2    Defendant, Deon Stroud, was convicted of one count of unlawful use of a weapon by a

felon (UUWF) and one count of aggravated unlawful use of a weapon (AUUW) and was sentenced to three years' imprisonment. On appeal, Stroud argues that the circuit court erred in denying his motion to suppress evidence because the warrantless search of his vehicle was not a valid inventory search and was not justified as a search incident to arrest. For the following reasons, we affirm the judgment of the circuit court.

¶ 3                              BACKGROUND

¶ 4     Prior to trial, Stroud filed a motion to suppress the evidence recovered during a search of the vehicle he was driving when he was pulled over for driving at night without his headlights and taillights on. At the hearing on the motion to suppress, Chicago police officer Katie Blocker testified that on August 14, 2019, she was working with two partners, Officers Durkin and Morris. At approximately 10:33 p.m. that evening, the officers were driving behind a Jeep traveling eastbound on 87th Street near Wabash Avenue in Chicago. The Jeep had no headlights and taillights on. The officers were traveling "one car length" behind the Jeep and drove behind it for a "block and a half" before stopping the Jeep. The officers got out of their vehicle and approached the Jeep, at which time Stroud exited the Jeep, abruptly closed the door, and without prompting, told the officers that he was suspended, meaning he was driving on a suspended license. Office Blocker identified Stroud as the driver in open court.

¶ 5     Officer Blocker testified that she attempted to apprehend Stroud after he said he was driving on a suspended license, but Stroud was "able to get his right arm free" from her hands and attempted to flee. Stroud only managed to get about a foot away because "[h]e ran right into [her] other partner." At that point, Officer Blocker was able to apprehend and detain Stroud "[w]ith no further incident." Officer Blocker then gave Stroud a citation for driving on a suspended license and impounded the vehicle he was driving. Pursuant to Chicago Police

Department protocol, the Jeep was required to be searched before being impounded to protect the officers from liability for missing property.

¶ 6     After other officers arrived on the scene, Officer Blocker conducted an inventory search of the Jeep.  During that search she found a bookbag right behind the driver's seat that contained an unloaded handgun, and mail, including a paystub and a hospital bill, addressed to Stroud. Stroud was the only person in the vehicle.  Officer Blocker subsequently learned that Stroud did not have a FOID card or a concealed carry permit. The Jeep was impounded.  A video of the incident captured by Officer Blocker's body-worn camera was played for the court.

¶ 7     After arguments on the motion began, the trial court inquired of both parties if it could ask Officer Blocker additional questions.  Neither party objected, and the court asked Officer Blocker if the Jeep Stroud was driving was eventually towed.  Officer Blocker stated that she believed it was impounded. The arrest report indicated that the Jeep had been impounded. After both parties had a chance to ask additional questions, the trial court denied Stroud's motion stating:

> "It was a minor traffic stop, which turned into something more than that. It appears the defendant may have had time to run away. And then it turns out his license was suspended. Because his license was suspended, this becomes a jailable offense. He is going to the police station. The question then is about what happens with the car and if the car is subject to an inventory search or not.
>
> The search was aggressive at the scene. And I agree with Gant, that this is going way beyond any additional evidence that they may have gotten from the initial stop, which is the traffic violation, but if the car is going to be impounded, and it appears this car was impounded from the uncontroverted testimony I heard, they can search it. They

can search it aggressively.

Because the car was actually impounded, I am finding this was an inventory search. They did it right at the scene. And because of that I am not finding this is a violation of the 4th Amendment. They can do what they did in this case. I also find the officer was credible as a witness in telling about the circumstances of this case. So the motion to suppress is respectfully denied."

¶ 8     At Stroud's bench trial later that same day, the trial court "incorporated by reference" everything it heard during the hearing on Stroud's motion to suppress "into the trial record." Officer Blocker testified that she saw what she believed to be a "real" handgun in the red bag found in the Jeep.  Officer Durkin assisted her in recovering the gun because she did not have gloves. The gun was later inventoried at the Sixth District police station.  Along with the gun, a paystub and a letter from a hospital, both bearing Stroud's name, were found in the bag. The letter from the hospital was dated August 12, 2019, which was two days before the incident. On cross-examination Officer Blocker testified that in the course of her investigation she learned that the impounded Jeep was not registered to Stroud; it was registered to Tiana Mays.

¶ 9     Officer Thomas Durkin, who was working with Officer Blocker at the time the vehicle was stopped, testified that he also observed Stroud driving after sunset without headlights and taillights activated.  The officers stopped Stroud for the traffic offense and got out of their police car.  Officer Durkin heard Officer Morris yell to someone to get back in the car.  Officer Durkin walked to the driver's side of the Jeep because he assumed Officer Morris was talking to the driver of the jeep. When Officer Durkin got to the driver's side of the Jeep, he saw that Officer Blocker had "ma[d]e contact with the driver," whom he identified in open court as Stroud. Officer Durkin testified that Stroud was the only person in the Jeep.  Stroud was then placed

under arrest for driving on a suspended license. The vehicle Stroud was driving was searched by Officer Blocker prior to being impounded. Officer Durkin assisted Officer Blocker in recovering an unloaded .22 caliber revolver found inside a bookbag in the Jeep. Officer Durkin maintained constant care and control of the recovered gun until the officers returned to the Sixth District where he gave the gun to Officer Morris so that it could be inventoried.

¶ 10     The parties then stipulated that "defendant, Mr. Deon Stroud, on August 14, 2019, he had a felony conviction for manufacture and delivery of a controlled substance under Case Number 01 CR 1011701." The State then rested. The court subsequently denied Stroud's motion for a directed finding. The court then found Stroud guilty of the offenses charged. The court stated:

> "I find the police officers to be credible and compelling. The Defense does talk about there's no statements. It's not his car. He is in the car. He doesn't have a license. He is trying to avoid the encounter. Apparently the police are taking him into custody for driving on a suspended license, which is a custodial event. They are doing an inventory search of the car. The car was later towed and so they had to conduct an inventory search.
>
> And what's key here is where the gun was found. It was found in a place in the car not in plain view. It was somebody else's car. And they don't know how long Mr. Stroud had been in the car, what his relationship to the car was or who put the gun there. That might be a total different matter, but this gun was found in a bag that had other property of his. It was commingled with his own personal property. It was his bookbag I am finding based on the totality of the evidence. That gun was in the bookbag and that gun is attributable to him. It would be a finding of guilty."

¶ 11     Stroud filed a motion for a new trial, which the trial court denied. The court sentenced Stroud to three years' imprisonment with credit for 537 days of presentence custody credit. It is

from this judgment that Stroud now appeals.

¶ 12                                    ANALYSIS

¶ 13     Stroud argues that the trial court committed reversible error by denying his motion to suppress the gun recovered from the bookbag found behind the front seat of the Jeep he was driving.  Stroud argues that the warrantless search of the Jeep he was driving was not the result of a proper inventory search or a proper search incident to lawful arrest.  We disagree and find the search was a proper inventory search.

¶ 14     The standard of review applicable to a ruling on a motion to quash an arrest and suppress evidence is twofold. The trial court's factual findings and credibility determinations are upheld unless they are against the manifest weight of the evidence. *People v. Jones*, 215 Ill. 2d 261, 267-68 (2005). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *People v. Rockey*, 322 Ill. App. 832, 836 (2001). After the trial court's factual findings are reviewed, the court's ultimate legal rulings are reviewed *de novo*. *Jones*, 215 Ill. 2d at 268. We may consider the testimony presented at trial as well as the testimony at the suppression hearing when reviewing the trial court's ruling on a motion to suppress. *People v. Slater*, 228 Ill. 2d 137, 149 (2008).

¶ 15     The fourth amendment to the United States Constitution provides the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV. Reasonableness under the fourth amendment generally requires a warrant that is supported by probable cause. *Jones*, 215 Ill. 2d at 269.  "A search conducted without prior approval of a judge or magistrate is *per se* unreasonable under the fourth amendment, subject only to a few specific and well-defined exceptions.*" People v. Bridgewater*, 235 Ill. 2d 85, 93 (2009). Law enforcement officers may undertake a warrantless

search of a vehicle if there is probable cause to believe that the automobile contains evidence of criminal activity that the officers are entitled to seize." *People v. James*, 163 Ill. 2d 302, 312 (1994). "To establish probable cause, it must be shown that the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that the automobile contains contraband or evidence of criminal activity." *People v. Hill*, 2020 IL 124595, ¶ 2.

¶ 16    An inventory search of a lawfully impounded vehicle is a judicially created exception to the warrant requirement of the fourth amendment. *People v. Hundley*, 156 Ill. 2d 135, 138 (1993). The three requirements for a valid warrantless inventory search are: "(1) the original impoundment of the vehicle must be lawful; (2) the purpose of the inventory search must be to protect the owner's property and to protect the police from claims of lost, stolen, or vandalized property and to guard the police from danger; and (3) the inventory search must be conducted in good faith pursuant to reasonable standardized police procedures and not as a pretext for an investigatory search." *Id*.  A defendant must make a *prima facie* case that the evidence was obtained by an illegal search or seizure, and once that *prima facie* case is established, the burden shifts to the State to present evidence to counter the defendant's *prima facie* case.  *People v. Gipson*, 203 Ill. 2d 298, 306-07 (2003).  However, the ultimate burden of proof remains with the defendant.  *Id*. at 307.

¶ 17    In the case at bar, Stroud made a *prima faci*e case that the gun in bag behind the front seat was obtained illegally by establishing that the search of the vehicle was conducted without a warrant, thereby shifting the burden to the State.  *Id*.  However, the State established that the impoundment of the vehicle was lawful when Officer Blocker provided unrebutted testimony that Stroud's vehicle was being "impounded for driving on a suspended license."  Section 9-80-

240(a) of the Municipal Code of Chicago (Code) states that a vehicle being operated by a person with a suspended driver's license "shall be subject to seizure and impoundment pursuant to this section." MCC, Ch. 9-80, Sec. 9-80-240(a). The only exceptions to impoundment are if the operator's license is suspended for failure to pay any fine due to "parking, standing, compliance, automated speed enforcement system, or automated traffic law enforcement system violation" or "failure to comply with emission testing." MCC, Ch. 9-80, Sec. 9-80-240(a)(2). We note that Stroud does not dispute the State's contention that section 9-80-240(a) of the Code allowed the city to seize and impound the car he was driving based on the fact that he was driving with a suspended license. Officer Blocker's testimony clearly established the first requirement that the impoundment of the Jeep was lawful. See *Hundley*, 156 Ill. 2d at 138.

¶ 18    Stroud nevertheless argues that the inventory search should be deemed unlawful because the police officers drove the vehicle from the scene to the police station to impound it rather than having it towed as required by section 9-80-240(b) of the Code. Section 9-80-240(b) provides that, "[w]henever a police officer has probable cause to believe that a vehicle is subject to seizure and impoundment pursuant to this section, the police officer shall provide for the towing of the vehicle to a facility controlled by the City or its agent." MCC, Ch. 9-80, Sec. 9-80-240(b).

¶ 19    We do not find this deviation from procedure to be significant. Although there was no testimony offered here to explain why an officer drove the Jeep to the police station to be impounded rather than having it towed, we can contemplate situations where both resource availability and time constraints would necessitate such an action. We also note that, by driving the vehicle to the police station himself, the officer saved the owner of the vehicle the cost of the towing and storage fees. MCC, Ch. 9-80, Sec. 9-80-240(a)(1) (imposing towing and storage costs on owner of vehicle). The fact that the Jeep was driven and not towed does not undermine

the lawfulness of its impoundment for purposes of an inventory search.

¶ 20     The State also met the second requirement for a valid warrantless inventory search by establishing that "the purpose of the inventory search must be to protect the owner's property and to protect the police from claims of lost, stolen, or vandalized property and to guard the police from danger." "An inventory search is standard procedure for the Chicago police department prior to impounding a vehicle to protect the owner's property and police department from liability for any missing property." *Hundley*, 156 Ill. 2d at 138.  Officer Blocker testified that pursuant to Chicago police department protocol, the Jeep was required to be searched before being impounded to protect the officers from liability for missing property.  Stroud did not challenge this testimony.

¶ 21     With respect to the third requirement for a valid warrantless inventory search,  Stroud argues that the inventory search was not conducted in good faith in that there was no evidence offered to establish that the Jeep needed to be removed from the location where it was stopped. "Where the police impound a vehicle based on a cognizable reason, an inventory search pursuant to the tow is justified." *People v. Mason*, 403 Ill. App. 3d 1048, 1054 (2010).

¶ 22     The trial court heard all of the evidence and the arguments and concluded that Officer Blocker had the right to enter the vehicle and inventory the items found inside.  Here, the officers had a "cognizable reason" for impounding the car because Stroud was driving on a suspended license and the City's ordinance allowed for the vehicle to be impounded. Stroud did not offer any additional evidence to rebut Officer Blocker's testimony that she was following standard police procedure to impound the vehicle and the burden remained on Stroud once the State presented Officer Blocker's testimony to justify the warrantless search.

¶ 23     We find Stroud's reliance on *People v. Clark*, 394 Ill. App. 3d 344 (2009), to support his

claim that the inventory search of his vehicle was invalid to be misplaced. In *Clark*, police officers stopped the defendant for failing to make a complete stop at a stop sign. *Id*. at 345. The defendant was arrested when he could not produce his identification. Police then conducted a warrantless search of his vehicle and cocaine was discovered in the rear ashtray. *Id*. The defendant filed a motion to quash the arrest and suppress the evidence discovered. *Id*. At the hearing on the motion, the arresting officer testified he performed a warrantless search of the vehicle because the vehicle would be towed. *Id*. at 346. The trial court denied the defendant's motion, finding that the search of the defendant's car was valid as incident to the towing under police department policy. *Id*.

¶ 24    On appeal, the State argued that the defendant's vehicle was properly impounded pursuant to police policy because the vehicle would be a hazard if it were left on the street, and it was necessary to protect the vehicle from damage or theft. *Id*. at 348. We found insufficient evidence to show the officer was acting pursuant to standardized police procedure in deciding to tow the vehicle because "no cognizable reason for the impoundment was shown to justify the subsequent search conducted pursuant to it," where the officers' testimony was "insufficient to show that he was acting in accordance with the standardized police procedure regarding the decision to tow." *Id*. at 394.

¶ 25    The instant case is distinguishable from *Clark*. Here, Officer Blocker testified that the Chicago police department's policies required the Jeep to be impounded because Stroud admitted to driving with a suspended license. Therefore, the police had a "cognizable reason" for impounding the vehicle because Stroud admitted to driving on a suspended license and the officers were following the directive of section 9-80-240(a) of the Code. *Mason*, 403 Ill. App. 3d

at 1054; See also *People v. Bunn*, 2022 IL App (1st) 192015-U, ¶ 15[1] (officers had a "cognizable reason" for impounding the car because the driver was driving on a suspended license in violation of section 9-80-240 (a) of the Chicago Municipal Code). Stroud nevertheless argues that, as in *Clark*, the State failed to offer any evidence that the Jeep needed to be impounded because it was a traffic hazard. However, unlike *Clark*, the offense for which Stroud was charged – driving on a suspended license – triggered the impoundment provision of the City's Ordinance, and it includes no exception for a car this is parked legally, not impeding traffic, or not threatening public safety. Therefore, the officers properly conducted an inventory search before impoundment and Stroud's motion to suppress was properly denied.

¶ 26 Given our finding that the handgun was recovered as a result of a lawful inventory search, we need not address Stroud's arguments that the warrantless search of the vehicle was not justified as a search incident to arrest or that the court's determination that the gun would have inevitably been discovered as justification for the search was erroneous.

¶ 27                                CONCLUSION

¶ 28 Based on the foregoing, the judgment of the circuit court is affirmed.

¶ 29 Affirmed.

---

[1] Unpublished orders from the Illinois Appellate Court entered after January 1, 2021, may be cited for persuasive purposes. Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021).