(No. 93422.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CURTIS GIPSON, Appellee.

*Opinion filed February 21, 2003.*

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, Theodore Fotios Burtzos and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Sarah Curry, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

JUSTICE THOMAS delivered the opinion of the court:

At issue are two questions concerning inventory searches: (1) whether a police officer's unrebutted testimony about police policy on inventory searches can be sufficient evidence of such a policy if the State does

not introduce a written policy into evidence; and (2) whether a policy requiring the police to inventory items of value is sufficient to allow the opening of closed containers if the policy does not specifically mention closed containers.

## BACKGROUND

The State charged defendant in the circuit court of Cook County with one count of possession of a controlled substance (cocaine) with the intent to deliver (720 ILCS 570/401(a)(2)(A) (West 1996)). Defendant moved to quash his arrest and to suppress the evidence that was found during a search of his car.

At the hearing on the motion to suppress, defendant testified as follows. At 12:25 a.m. on January 8, 1998, defendant was driving home from work. When defendant reached the intersection of Jackson and Homan in Chicago, a police car began to follow him. The police car followed him for several minutes. The police car's lights went on when defendant crossed Kedzie, and defendant pulled over. The police officer approached defendant's car and told defendant that he was driving on a revoked license. Defendant gave the officer his identification and proof of insurance, following which the officer put defendant into the backseat of his squad car and locked it. The officer put some information into his computer and told defendant that if he did not have any outstanding warrants, he was free to go.

According to defendant, the officer never told him that he was under arrest. The officer then got out of the squad car and looked under the hood of defendant's car. He searched the passenger compartment of the car and then came back to the squad car. The officer started typing on his computer again and then went back to defendant's car, took the keys out of the ignition, and opened the trunk. Defendant testified that he had a yellow plastic Ameritech bag tied closed in the trunk. Inside

of the Ameritech bag was a black plastic bag, containing rocks of cocaine, that was also tied closed. According to defendant, he never gave the officer permission to search his car, and the officer never told him that the car would be towed or that the officer was conducting an inventory search. The officer never told defendant he was under arrest before he searched the car.

The State presented the testimony of Sergeant David Byrd of the Illinois State Police. Byrd testified that he initially began following defendant's car because it had a cracked windshield. A "registration response" on defendant's license plate revealed that the owner's name was Curtis Gipson and that Gipson's driver's license had been revoked. Byrd pulled over defendant and informed him that the reason for the stop was that the car had a defective windshield and that the car's owner had a revoked license. When defendant confirmed that he was Curtis Gipson, Byrd placed defendant in the back of his squad car.

Once defendant was in the car, Byrd called a tow truck and conducted an inventory search of defendant's vehicle. Byrd explained that the State Police policy is to tow the vehicle when someone is arrested for driving on a revoked license. When a vehicle is towed following an arrest, the police policy is that a tow inventory search should be conducted. When asked to explain the police policy on tow inventory searches, Byrd responded:

> "We are required to check the passenger compartment, and trunk area for any valuables, or just for our own—we don't want anything to leave us that might be of value without checking it first and putting it down on the tow sheet."

When Byrd opened the trunk, he found a yellow Ameritech bag. He opened the bag and noticed two smaller bags inside. He opened these and observed what appeared to be crack cocaine. Byrd testified that he never told defendant that he would be free to go at some point.

Rather, defendant was arrested and taken into custody. Byrd gave defendant a ticket for having a cracked windshield and driving on a revoked license.

Following arguments by the attorneys, the trial judge recalled Sergeant Byrd to the stand. The following colloquy ensued:

"THE COURT: You are still under oath, sergeant.

Is there a printed procedure regarding towing by the Illinois State police?

THE WITNESS: Yes, there is, your Honor. It's in our policy manual.

THE COURT: It's in the policy manual?

THE WITNESS: Right, and we teach it to all our cadets when they come out on the road.

THE COURT: Is it a manual that you might have handy?

THE WITNESS: No, it's a—

THE COURT: Big?

THE WITNESS: Six hundred pages.

THE COURT: But it is printed in the police procedure?

THE WITNESS: It is printed, tow searches and vehicles being towed and if I may, the reason we do that is because even if somebody is revoked and if they just said, okay, okay, you are going to write the ticket—

MR. DRAPER [defendant's attorney]: Objection, judge.

THE COURT: Okay, all right."

Following further arguments from counsel, the trial court decided to reserve ruling on the motion until the parties submitted further case law. Two months later, the court granted defendant's motion to suppress. The trial judge stated that the police had no right to tow the car and that State Police policy could not supercede the law. The State filed a motion to reconsider in which it pointed out that the court had erroneously relied on cases that did not involve inventory searches. At the hearing on the motion, the State argued that a lawful inventory search pursuant to State Police policy had occurred. The trial judge responded that he was not sure what the State Police policy was because he had never seen it and the of-

ficer might have just given his own interpretation. The trial judge then stated that the police could not use a minor traffic ticket to create a basis for a search and that defendant had only been stopped for "a little, minor thing like a cracked windshield." The court questioned why the police had to tow the car. The State responded that defendant had been arrested for driving on a revoked license and that a proper tow inventory search had occurred. The court denied the motion to reconsider.

The State appealed, and the Appellate Court, First District, issued an unpublished order reversing the trial court. The appellate court held that the type of tow and impoundment carried out here were authorized by statute. The court then held that Officer Byrd's uncontradicted and unimpeached testimony provided sufficient evidence of the State Police policy on tow inventory searches and that the State was not required to admit the written policy into evidence. Defendant filed a petition for rehearing, which the court granted. The appellate court issued a second unpublished order, this time affirming the trial court. No. 1—99—1811 (unpublished order under Supreme Court Rule 23). The court continued to hold that the tow and impoundment were lawful. This time, however, the court agreed with the trial court that Sergeant Byrd's testimony was insufficient and that the State should have introduced the actual written State Police policy. Further, the court noted that Byrd's testimony was also deficient in that he never stated that there was a specific police policy authorizing him to open closed containers during inventory searches. We granted the State's petition for leave to appeal.

## ANALYSIS

On review of a trial court's ruling on a motion to suppress, we accord great deference to the trial court's factual findings, and we will reverse those findings only if they are against the manifest weight of the evidence.

*People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). However, we review *de novo* the ultimate legal question of whether suppression is warranted. *Sorenson*, 196 Ill. 2d at 431.

The State first argues that the appellate court erred in holding that Officer Byrd's testimony was insufficient to establish the State Police policy on inventory searches and that there is no constitutional requirement that the State produce the actual written policy. We agree with the State.

An inventory search of a lawfully impounded vehicle is a judicially created exception to the warrant requirement of the fourth amendment. *People v. Hundley*, 156 Ill. 2d 135, 138 (1993). In *South Dakota v. Opperman*, 428 U.S. 364, 369, 49 L. Ed. 2d 1000, 1005, 96 S. Ct. 3092, 3097 (1976), the Supreme Court identified three objectives that are served by allowing inventory searches: (1) protection of the owner's property; (2) protection of the police against claims of lost or stolen property; and (3) protection of the police from potential danger.

In conducting such a search, the police must be acting pursuant to standard police procedures. *Colorado v. Bertine*, 479 U.S. 367, 372-74, 93 L. Ed. 2d 739, 746-47, 107 S. Ct. 738, 741-42 (1987). " ' " "[A] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." ' " *Illinois v. Lafayette*, 462 U.S. 640, 648, 77 L. Ed. 2d 65, 72, 103 S. Ct. 2605, 2610-11 (1983), quoting *New York v. Belton*, 453 U.S. 454, 458, 69 L. Ed. 2d 768, 774, 101 S. Ct. 2860, 2863 (1981), quoting *Dunaway v. New York*, 442 U.S. 200, 213-14, 60 L. Ed. 2d 824, 836, 99 S. Ct. 2248, 2257 (1979). However, as Professor LaFave has noted, the courts have generally not read *Bertine* as requiring that these procedures be in writing. 3 W. LaFave, Search & Seizure § 7.4(a), at 550 (3d ed. 1996). Rather, a police officer's

testimony that he was following standard procedure is generally deemed to be sufficient. See, *e.g., United States v. Lage*, 183 F.3d 374, 380 (5th Cir. 1999) (officer's unrebutted testimony that he acted in accordance with standard inventory procedures is sufficient); *United States v. Lozano*, 171 F.3d 1129, 1132 (7th Cir. 1999) (lack of written policy not dispositive; evidence of "well-honed" police department routine may be sufficient); *United States v. Thompson*, 29 F.3d 62, 65 (2d Cir. 1994) (existence of standard procedures may be proved either by reference to written rules and regulations or testimony regarding standard practices); *United States v. Lowe*, 9 F.3d 43, 46 (8th Cir. 1993) (testimony of officers is sufficient to establish department policy; there is no requirement that the prosecution must produce written policy); *United States v. Ford*, 986 F.2d 57, 60 (4th Cir. 1993) (evidence was sufficient to establish customary department policy, even though policy was not in writing); *United States v. Mancera-Londono*, 912 F.2d 373, 375 (9th Cir. 1990) (inventory procedures can be standardized without being written); *United States v. Frank*, 864 F.2d 992, 1002-04 (3d Cir. 1988) (officer's unrebutted testimony sufficient to establish standard procedure; procedures do not need to be written).

In Illinois, a split has developed in the appellate court over whether police inventory procedures have to be in writing. In *People v. Evans*, 314 Ill. App. 3d 985, 989 (2000), citing 3 W. LaFave, Search & Seizure § 7.4(a), at 548-50 (3d ed. 1996), the Second District stated that, "[w]hile written policies on inventory searches are preferred, there is no requirement that such policies be in writing." The Fourth District, by contrast, does require that the State produce evidence of "written directives or policies which outline the procedures to be followed by law enforcement officers." *People v. Williamson*, 241 Ill. App. 3d 574, 578 (1993). The Fourth District

has held that this requirement is "binding on all inventory searches." *People v. Krueger*, 268 Ill. App. 3d 190, 192 (1994).

We agree with the Second District that there is no requirement that the procedures be in writing. The Supreme Court requires only that, in conducting inventory searches, the police act in accordance with standardized department procedures. Although it may be easier for the State to show that it was acting in accordance with standard procedures if it can produce a written policy, the Supreme Court has not required, as a matter of constitutional law, that such policies be reduced to writing.

The precise issue we face here is somewhat different. Here, the issue is whether, if the police do have a written policy on inventory searches, the policy itself has to be admitted into evidence, or if an officer's testimony describing the standard procedure can be sufficient. The State contends that the appellate court's decision in this case effectively creates a rule that the State must always produce a written policy on inventory searches if one exists. Defendant contends that we do not need to decide the issue as a matter of law. Rather, the question in any case is simply whether the State introduced sufficient evidence of standardized procedures. Defendant argues that Officer Byrd's testimony was insufficient.

Defendant is correct that the issue is not one of law. Rather, the issue is simply whether the State introduced sufficient evidence that it was acting in accordance with standardized procedures. However, we disagree with defendant's assertion that the State did not meet its burden in this case. The defendant bears the burden of proof at a hearing on a motion to suppress. *People v. Williams*, 164 Ill. 2d 1, 12 (1994); 725 ILCS 5/114—12(b) (West 2000). A defendant must make a *prima facie* case that the evidence was obtained by an illegal search or

seizure. *People v. Berg*, 67 Ill. 2d 65, 68 (1977). If a defendant makes a *prima facie* case, the State has the burden of going forward with evidence to counter the defendant's *prima facie* case. See *People v. Wingren*, 167 Ill. App. 3d 313, 319 (1988). However, the ultimate burden of proof remains with the defendant. See *Wingren*, 167 Ill. App. 3d at 319.

Here, defendant made his *prima facie* case by showing that Sergeant Byrd searched the trunk of defendant's car without a warrant. The State, however, met its burden of going forward with the evidence by establishing that Sergeant Byrd searched defendant's trunk as part of a routine tow inventory search. Sergeant Byrd gave clear, unrebutted testimony of the standard procedures for inventory searches that he was following. Sergeant Byrd testified that it was department policy to tow the vehicle whenever a person is arrested for driving on a revoked license. Before the vehicle is towed, the arresting officer is supposed to do an inventory search of the vehicle and to record anything of value on the tow inventory sheet. The officer is supposed to check the passenger compartment and trunk area for valuables.

Defendant never attempted to challenge this testimony. His attorney did not ask a single question of Sergeant Byrd about the policy and presented no rebuttal testimony on the issue. The attorney did absolutely nothing to cast doubt on Sergeant Byrd's testimony. In his arguments to the trial court, the defense attorney's principal contention was that the police had no right to tow the car. The trial court, not the defense attorney, asked further questions about the policy. But the trial court seemed satisfied with Sergeant Byrd's answer. The trial court asked Sergeant Byrd if the procedure was written down, and Byrd responded that it was in the policy manual that was taught to all cadets. When the trial court asked Byrd if he had the manual handy, Byrd

began to answer the question by saying, "No, it's a—," following which the trial court finished Byrd's sentence for him by saying, "Big?" When Byrd tried to give more information about the policy, the court cut him off.

The court later ruled that it did not know what the police policy was because it had not seen the policy. This was error. Sergeant Byrd explained the police policy and defendant did not cross-examine him on the issue or offer any rebuttal to the testimony. The State met its burden of going forward with evidence to rebut the defendant's *prima facie* case. Sergeant Byrd's testimony established that defendant's trunk was searched as part of a routine tow inventory search. The ultimate burden of proof remained with defendant, and defendant offered nothing to show that the inventory search was improper.

The evidence provided by Sergeant Byrd's testimony was at least as complete as that offered in other cases in which this court has upheld inventory searches. In *People v. Clark*, 65 Ill. 2d 169, 172 (1976), this court upheld an inventory search based on the following evidence:

> "The officer testified that it was the policy of the Decatur police department to remove and secure any articles of value contained in any car that was to be towed away, and to prepare an inventory of them. The inventory search, he stated, was to protect the owner of the articles as well as to assist in defense against a future charge of theft."

In *Hundley*, 156 Ill. 2d 135, the written policy was introduced into evidence and this court upheld the search. However, the written policy merely provided as follows:

> " 'An examination and inventory of the contents of all vehicles/boats towed or held by authority of Division personnel shall be made by the officer who completes the Tow-In Recovery Report. This examination and inventory shall be restricted to those areas where an owner or operator would ordinarily place or store property or equipment in the vehicle/boat; and would normally include front and rear seat areas, glove compartment, map case, sun visors,

and trunk and engine compartments.' " *Hundley*, 156 Ill. 2d at 137.

Sergeant Byrd's testimony was virtually identical to the evidence offered in these cases, but the trial court rejected it for the sole reason that he could not compare the testimony to the written policy. But, as we previously noted, there is no rule that the procedures even be in writing. Inventory searches can be upheld solely on an officer's unrebutted testimony that he was following standard procedures. In a case in which the procedures were not in writing, the trial court would not be able to compare the officer's testimony to anything else.

Of course, it would be the better practice for the State to produce the written policy. If it does not, the State leaves itself open to the possibility that the defense will be able to cast doubt on the officer's testimony either through cross-examination or rebuttal testimony. Here, defense counsel did not attempt to do so. Defendant had the burden of proof, and he failed to show that he was subjected to an illegal search.

The State next contends that the appellate court erred in holding that Sergeant Byrd was not entitled to open the plastic bags because the State failed to produce any evidence that the inventory search policy allowed the opening of closed containers. In *Florida v. Wells*, 495 U.S. 1, 109 L. Ed. 2d 1, 110 S. Ct. 1632 (1990), the United States Supreme Court upheld the suppression of marijuana found in the trunk of a car during an inventory search. The marijuana was in a locked suitcase in the trunk, and the police forced open the suitcase as part of the inventory search. The record contained no evidence of a police policy on the opening of closed containers during inventory searches. The Supreme Court held that it would be permissible for the police policy to mandate the opening of all containers or no containers, or to allow the police the discretion to decide which containers should be opened, based on the nature of the search and the

characteristics of the container. However, because there was no evidence of any policy with respect to closed containers in that case, the Supreme Court held that the search was not sufficiently regulated to satisfy the fourth amendment. *Wells*, 495 U.S. at 4-5, 109 L. Ed. 2d at 6-7, 110 S. Ct. at 1635.

In *Hundley*, this court held that the general order of the State Police was sufficient to allow the opening of closed containers during an inventory search. The policy introduced into evidence in *Hundley*, which was set forth previously in this opinion, did not use the words "closed containers." Rather, it required the police to inventory the contents of towed vehicles and to look wherever the owner or operator would ordinarily place or stow property. *Hundley*, 156 Ill. 2d at 137. The officer testified in *Hundley* that he opened a cigarette case because, in his experience, women often put their drivers' licenses and money in such cases. This court held that the general order of the State Police was "adequate to the situation." *Hundley*, 156 Ill. 2d at 139.

The Seventh Circuit agrees with *Hundley* that it is not necessary that the policy use the words "closed containers." In *United States v. Richardson*, 121 F.3d 1051 (7th Cir. 1997), the court construed the same Illinois State Police policy that we construed in *Hundley*. The court found that the policy was sufficient to allow the police to open bags in the trunk of the defendant's car. The purpose of the policy is to inventory valuables, and searching bags in the trunk "protects against claims of stolen or damaged personal property." *Richardson*, 121 F.3d at 1056. In *United States v. Wilson*, 938 F.2d 785 (7th Cir. 1991), the court also construed the Illinois State Police policy and held that the police were entitled to open closed bags in the trunk of a car because the policy required the officer to inventory the contents of the vehicle. The court rejected defendant's argument that

the search was illegal because the policy did not specifically mention closed containers:

> "While the Illinois policy may not use the buzz words 'closed container' we are convinced that the term 'contents' provides sufficient elucidation to satisfy the requirements of *Wells*. Here, Trooper Miller inventoried the contents of the entire vehicle, as required under the policy. He continued to follow the established procedure when searching the contents of the trunk." *Wilson*, 938 F.2d at 789.

*Hundley* is controlling on this issue. Although defendant is correct that Sergeant Byrd did not specifically mention a closed container policy, he did testify that the policy required the police to check the passenger compartment and the trunk for valuables and to list any valuables on the tow inventory sheet. Obviously, such a policy requires the police to open any containers that might contain valuables. The policy that Sergeant Byrd testified to was more specific than the one at issue in *Hundley*. The *Hundley* policy merely referred to an inventory of the contents of the vehicle. Here, Sergeant Byrd specifically testified that he was supposed to search the trunk and passenger area for "valuables" and to inventory anything of value on the tow sheet. We believe this policy was sufficient to allow Sergeant Byrd to open the plastic bags in the trunk of defendant's car. Defendant argues that *Hundley* is distinguishable because the written policy was introduced in that case and not in this one. That is a distinction without a difference. The point of *Hundley* is that a policy requiring an inventory of all of the contents of a vehicle is sufficient to allow the opening of closed containers. Here, the policy of inventorying anything of value found in the passenger compartment or trunk was sufficient to allow the opening of containers that may contain valuables.

## CONCLUSION

Defendant failed to meet his burden of showing that he was subjected to an illegal search. Accordingly, the ap-

pellate court erred in upholding the trial court's suppression order. We reverse the judgments of the appellate court and the circuit court and remand to the circuit court for further proceedings consistent with this opinion.

*Appellate court judgment reversed;*
*circuit court judgment reversed;*
*cause remanded.*