THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MIGUEL A. GALARZA, Defendant-Appellee.

Second District    No. 2—04—1075

Opinion filed May 19, 2009.

Melissa S. Barnhart, State's Attorney, of Yorkville (Martin P. Moltz and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE BURKE delivered the opinion of the court:

In the early morning of July 11, 2004, defendant, Miguel A. Galarza, was eating a Taco Bell meal while sitting in the front passenger seat of a vehicle driven by Scott Valencia. After the vehicle drifted

over the center line of the road (625 ILCS 5/11—701(a) (West 2004)), Officer John Collins stopped it and asked Valencia for his driver's license. Because Valencia's driving privileges were suspended, he was arrested. After Valencia's arrest, Collins approached defendant, whom the officer did not see doing anything unusual, and asked him whether he could drive. Defendant replied that he could not. Collins then asked defendant for his driver's license or identification card, because the officer needed to record defendant's information in case he was needed as a witness to Valencia's arrest. Defendant produced an Illinois identification card, and Collins returned to his squad car and asked his dispatcher to investigate defendant. The dispatcher informed the officer that there was a warrant for defendant's arrest. Collins arrested defendant and proceeded to inventory the vehicle pursuant to the police department's tow policy. In the trunk of the vehicle was a bowling bag that contained a gun. Valencia denied ownership of the weapon; however, defendant allegedly made statements to Collins that connected defendant to the weapon. Defendant was subsequently charged by information with unlawful possession of a weapon by a felon (720 ILCS 5/24—1.1(a) (West 2004)), and he moved to quash his arrest and suppress the evidence seized. Following a hearing, the trial court quashed defendant's arrest and suppressed the statements defendant made to Collins, but the court did not suppress the gun. The State filed a certificate of impairment and appealed the suppression order pursuant to Supreme Court Rule 604(a)(1) (210 Ill. 2d R. 604(a)(1)).

In a prior decision, we affirmed. *People v. Galarza*, No. 2—04—1075 (2006) (unpublished order under Supreme Court Rule 23). The Illinois Supreme Court has entered a supervisory order directing us to vacate our judgment and reconsider our decision in light of *People v. Harris*, 228 Ill. 2d 222 (2008), and *People v. Cosby*, 231 Ill. 2d 262 (2008). *People v. Galarza*, 229 Ill. 2d 677 (2008). After reconsideration, we reverse and remand.

## BACKGROUND

At the suppression hearing, Collins was the only witness who testified. He stated that on July 11, 2004, at approximately 1:09 a.m., he was on duty when he saw a 2004 Toyota Camry pull off to the side of the road. The Camry's headlights were on, but not its hazard lights. Although Collins did not observe anything unusual inside the vehicle, he decided that he would check on the driver's well-being. Before the officer could do so, the Camry pulled back onto the road. Collins followed the vehicle and soon observed the car swerve to the left and over the dotted center line. Collins subsequently activated his overhead lights and stopped the Camry.

When Collins approached the driver's side of the Camry, he observed two men sitting inside the vehicle. Collins illuminated the inside of the Camry with his flashlight and saw defendant sitting in the front passenger seat, eating a Taco Bell product. Collins asked the driver, Valencia, for proof of insurance and his driver's license. Although Valencia was able to produce proof of insurance, he did not have a driver's license, and, instead, he gave Collins his state identification card.

Collins took those documents back to his squad car, and, using his mobile data computer, he learned that Valencia's driving privileges were suspended. Collins informed Valencia about the status of his driving privileges and arrested him. Defendant remained seated in the vehicle, and Collins did not observe defendant doing anything unusual.

Collins informed Valencia that the Camry would be towed, and Valencia asked if he could call his mother to see if she could retrieve the vehicle. Collins allowed Valencia to contact his mother on a cellular phone, and his mother declined to come get the Camry. While Valencia phoned his mother, defendant remained seated in the vehicle. Collins then handcuffed Valencia, and, after approaching defendant, Collins inquired whether defendant could drive the Camry. Defendant replied, "I can't drive," and Collins asked defendant for a driver's license or other form of identification. Defendant produced an Illinois state identification card, which listed defendant's name, address, and date of birth and had a picture of defendant on it. Defendant remained seated in the Camry during this exchange.

Collins returned to his squad car with Valencia, seated Valencia in the backseat of the squad car, and contacted his dispatcher. After verifying defendant's information, the dispatcher informed Collins that there was a warrant for defendant's arrest for failing to appear in court in Aurora. Collins testified that, from the time he obtained defendant's identification through the time he contacted his dispatcher, defendant remained seated in the Camry and he never observed defendant exhibiting any unusual or suspicious behavior.

Collins then approached the passenger side of the Camry, informed defendant about the outstanding warrant, handcuffed defendant, and placed him in the rear seat of the squad car. Although defendant did not make a statement at that time, he did make statements to Collins at some point thereafter.

After defendant was taken into custody, Collins proceeded to search the vehicle pursuant to the police department's tow policy. That policy also requires an officer to identify a vehicle's passengers in the event that the passengers need to be located to serve as witnesses to the arrest. Collins testified that, once defendant produced

his state identification card, he possessed the information he needed to identify defendant as a witness.

During the search of the Camry, Collins found a bowling bag in the trunk of the vehicle. The bag contained a bowling ball, bowling shoes, and a handgun. Pursuant to a firearm owner's identification card check, Collins learned that Valencia was authorized to own a firearm, but defendant was not. Collins asked Valencia about the firearm, and Valencia, who appeared confused, asked, "[W]hat firearm?"

The trial court quashed defendant's arrest and suppressed the statements defendant made to Collins after he was taken into custody. In reaching this conclusion, the trial court found that Collins could properly ask defendant for his identification, but the officer could not investigate defendant via dispatch because, when that investigation occurred, Collins did not possess a reasonable and articulable suspicion that defendant was involved in any criminal activity. Because defendant made the statements at issue after he was improperly detained, the trial court suppressed them. Nevertheless, the trial court did not suppress the weapon, as it was found solely as a result of the proper inventory search.

The State moved to reconsider, contending that defendant made his statements to Collins after the officer had probable cause to support an arrest for unlawful possession of a weapon by a felon. Thus, the State claimed, the statements were sufficiently attenuated from any improper detention. The trial court denied the motion, and the State appealed.

On appeal, the State advanced two alternative reasons why defendant's motion to quash and suppress should have been denied *in toto*. First, the State claimed that conducting a warrant check on a passenger is permissible if such investigation does not prolong the passenger's detention. The State then contended that, if the warrant check was improper, the subsequent statements could nevertheless be used in prosecuting defendant for unlawful possession of a weapon by a felon, because intervening probable cause attenuated the taint of the unlawful detention. In February 2006, we determined that the warrant check was unreasonable and that no attenuation arose. *People v. Galarza*, No. 2—04—1075 (2006) (unpublished order under Supreme Court Rule 23). The State appealed to our supreme court.

In a supervisory order issued November 26, 2008, the Illinois Supreme Court denied the State's petition for leave to appeal but remanded the case to this court for reconsideration in light of *Harris* and *Cosby*.

## ANALYSIS

On appeal, we consider whether the warrant check of defendant was proper and, if not, whether intervening probable cause attenuated the taint of the unlawful detention. However, before addressing those issues, we reexamine defendant's claim that this court lacks jurisdiction over the appeal, and then we address defendant's motion to cite additional authority.

### 1. Jurisdiction

■ Defendant contends that, because the substance of the statements defendant made to Collins is unknown, an appeal pursuant to Rule 604(a)(1) is improper because it is not known whether the suppression of those statements substantially impaired the State's ability to prosecute this case. See *People v. Young*, 82 Ill. 2d 234, 247 (1980). We find defendant's argument unpersuasive. Rule 604(a)(1) provides that the State may appeal from an order the substantial effect of which results in, among other things, suppressing evidence. 210 Ill. 2d R. 604(a)(1). In determining whether that threshold has been met, courts focus on the effect of the suppression order, not the nature of the evidence suppressed. *People v. Drum*, 194 Ill. 2d 485, 491 (2000). Thus, if the trial court's order precludes the State from presenting evidence to the fact finder, the State may appeal the order pursuant to Rule 604(a)(1). *Drum*, 194 Ill. 2d at 492 (in murder prosecution where the codefendants refused to testify against the defendant at trial and the trial court denied the State's pretrial motion to admit the codefendants' statements pursuant to residual hearsay exception, our supreme court concluded that the State could appeal denial of pretrial motion under Rule 604(a)(1), because "the [pretrial] order prevent[ed the codefendants' statements] from being presented to the fact finder").

Here, the trial court's suppression order prevented the State from presenting at trial the statements defendant made to Collins after he was arrested. Although it is true that, at the hearing on the motion to quash and suppress, neither party elicited testimony from Collins concerning the content of defendant's statements, it would be ludicrous to conclude that those statements did not substantially implicate defendant in the offense with which he was charged, *i.e.*, unlawful possession of a weapon by a felon. Indeed, in his motion to quash and suppress, defendant intimated that he made statements that "connect [him] with the crime *** and which the [State] intends to employ in the prosecution of this cause." Thus, we deem satisfied the requirement of substantial impairment.

Moreover, at a hearing on a motion to suppress, the content of a defendant's statements is immaterial. The purpose of a motion to sup-

press is to decide whether a defendant's rights were violated so as to taint any subsequent statements or other evidence. See *In re Bizzle*, 36 Ill. App. 3d 321, 328 (1976). If, as defendant urges, the specific content of a defendant's statements were significant in deciding whether the State could appeal, then the State would most likely insist that a recitation of those statements be presented at every suppression hearing. Such insistence would alter the scope of those hearings and possibly taint them, as error arises when a trial court considers the content of the statements as it rules on a motion to suppress. See *People v. Torres*, 200 Ill. App. 3d 253, 264 (1990). Given the above, we find defendant's jurisdictional argument meritless.

## 2. Motion to Cite Additional Authority

■ In his motion to cite additional authority, defendant asks us to consider the recent decision of *People v. Oliver*, 387 Ill. App. 3d 1045 (2009). In *Oliver*, the defendant, a driver, was stopped for following another vehicle too closely. *Oliver*, 387 Ill. App. 3d at 1046. Because the defendant did not have a valid driver's license, the officer asked Orlando James, a passenger in the car, whether his driving privileges were intact. In response, James verbally gave the officer his identification. The officer's dispatcher advised the officer that, although James was on mandatory supervised release, his driving privileges were not impaired. The officer then told the defendant and James that they were free to go as long as James drove. However, because a strong odor emanating from inside the car aroused the officer's suspicions, the officer asked the defendant and James whether he could search the car. The defendant and James consented to a search of the car's interior, which uncovered a liquor bottle that smelled like the odor the officer detected. The officer then asked the defendant and James whether he could search the trunk of the car. Both men consented. That search uncovered cocaine. *Oliver*, 387 Ill. App. 3d at 1047.

The defendant moved to suppress the evidence, and the trial court denied the motion, finding that the officer did not illegally detain the defendant and James before requesting consent to search. *Oliver*, 387 Ill. App. 3d at 1049. The trial court then determined that the men voluntarily consented to the search of the car. *Oliver*, 387 Ill. App. 3d at 1049. On appeal, the reviewing court considered "whether [the officer's] request for consent to search the trunk constituted a new seizure of the defendant." *Oliver*, 387 Ill. App. 3d at 1051. The court found that it did, noting that a reasonable person in the position of the defendant or James would not have felt free to leave when the officer asked for consent to search the trunk. *Oliver*, 387 Ill. App. 3d at 1051. And, because the officer lacked reasonable and articulable

suspicion of criminal activity when he asked for consent to search the trunk, the appellate court concluded that the new seizure of the defendant and James was unlawful. *Oliver*, 387 Ill. App. 3d at 1052.

Although we grant defendant's motion to cite *Oliver*, we fail to see its relevance to this case. As noted, in contrast to *Oliver*, the warrant check of defendant occurred *during* the traffic stop, before the tow truck arrived. Thus, unlike in *Oliver*, no new seizure occurred. Because no new seizure occurred, we, in contrast to *Oliver*, need not consider whether the warrant check would have been justifiable as such.

For similar reasons, even though our supreme court has directed us to reconsider this appeal in light of *Cosby*, we fail to see how that case is applicable here. In *Cosby*, a consolidated case, the court emphasized:

> "The requests for consent to search in both of the instant cases followed the officers' returning of the defendants' paperwork. At that point, the traffic stops came to an end. The relevant question is whether the officers' actions after the initial traffic stops had concluded constituted a second seizure of either defendant." *Cosby*, 231 Ill. 2d at 276.

Here, in contrast to *Cosby*, Collins performed the warrant check *during* the traffic stop, and he arrested defendant immediately thereafter. Thus, unlike in either *Cosby* or *Oliver*, our focus is on whether the traffic stop, including the warrant check, was reasonable, not whether there was a second seizure. See *Harris*, 228 Ill. 2d at 247 (noting that a passenger in a stopped vehicle is seized as an incident to the traffic stop).

### 3. Reasonableness of Detention

An examination of the reasonableness of Collins' actions begins with addressing the applicable standard of review. When we review a ruling on a motion to quash an arrest and suppress the evidence seized, our standard of review is usually twofold. We accord great deference to the trial court's factual findings and credibility determinations and reverse those conclusions only if they are against the manifest weight of the evidence. *People v. Gherna*, 203 Ill. 2d 165, 175 (2003); *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). After reviewing the trial court's factual findings, we review *de novo* the trial court's ultimate legal ruling. *Sorenson*, 196 Ill. 2d at 431. Here, because the facts are not in dispute and the trial court did not make any credibility assessments, our review is *de novo*. *People v. Mitchell*, 355 Ill. App. 3d 1030, 1032 (2005).

Reasonableness pursuant to the fourth amendment generally requires a warrant supported by probable cause. *People v. Love*, 199 Ill. 2d 269, 275 (2002). However, there are exceptions to the warrant

requirement. For example, after effecting a traffic stop, an officer may, without first obtaining a warrant, ask a passenger in the vehicle for identification and use the furnished information to run a warrant check on the passenger, as long as (1) the stop was initially lawful; (2) an innocent person in the passenger's position would have felt free to refuse to tender his identification to the officer; (3) the duration of the stop was not unreasonably prolonged; and (4) the warrant check did not infringe upon a constitutionally protected privacy interest. *Harris*, 228 Ill. 2d at 237-38, 248.

In assessing whether Collins acted reasonably, we are guided by *Harris*, which is factually similar to this case. In *Harris*, the defendant was a passenger in a vehicle that was stopped for making an illegal left turn. *Harris*, 228 Ill. 2d at 224. After trying to ascertain the identity of the driver, who told the officer that his driving privileges were either suspended or revoked, the arresting officer asked the defendant for identification. The officer testified that, pursuant to his usual practice, he would ask a passenger of a stopped vehicle for identification to determine whether the passenger could drive the stopped vehicle away from the scene once the driver is arrested. The defendant gave the officer his state identification card, and the officer investigated the defendant through the county dispatch, discovering that the defendant had an outstanding warrant for failing to appear in court. The defendant was arrested, and a search conducted pursuant to that arrest revealed that the defendant was carrying cocaine and cocaine paraphernalia. At no time during the stop did the officer ask the defendant whether he could drive, and the defendant never exhibited any behavior that aroused the officer's suspicions or led the officer to believe that the defendant was involved in any wrongdoing.

In examining whether the warrant check of the defendant was proper, our supreme court first determined that the officer had probable cause to stop the car in which the defendant was a passenger, because the officer observed the driver make an illegal left turn. *Harris*, 228 Ill. 2d at 232. The court then found that the officer could ask the defendant, who was lawfully seized but about whom the police lacked individualized reasonable suspicion, for his identification, because such a request did not unduly prolong the stop and no additional fourth amendment justification was required. *Harris*, 228 Ill. 2d at 242-44, 246. Citing the fact that a warrant check does not infringe upon any legitimate privacy interest, as such a check does not reveal any private activity or information, the court held that the warrant check on the defendant did not infringe upon a constitutionally protected privacy interest. *Harris*, 228 Ill. 2d at 237-38. Lastly, the court concluded that an innocent person in the defendant's position,

though not free to terminate his encounter with the police, would have felt free to decline the officer's request for identification. *Harris*, 228 Ill. 2d at 248.

■ Here, as in *Harris*, the stop of Valencia's car was supported by probable cause, as the car swerved over a road's dotted center line. See *People v. Sorrells*, 209 Ill. App. 3d 1064, 1069 (1991). Further, as in *Harris*, asking defendant for his identification and then checking the information provided against the information in the police department's computer system did not unduly prolong the stop. When Collins asked for defendant's identification and checked the information, he was waiting for a tow truck to remove Valencia's car from the road. Thus, the stop would have continued even without that inquiry. In any event, nothing in the record indicates that the inquiry took an unreasonable time. Because defendant bore the burden of establishing that the continued detention was unreasonable (see *People v. Williams*, 164 Ill. 2d 1, 12 (1994)), we must conclude that the stop was not unreasonably prolonged.

Moreover, as in *Harris*, validating the information on defendant's identification card with Collins' dispatcher did not infringe on any privacy interest, because, absent facts to the contrary, any information contained in the police department's computer system concerned matters of public record. Finally, as in *Harris*, an innocent passenger in defendant's position would have felt free to decline to give Collins his identification. A request for identification is facially innocuous and does not allude to any official interrogation or increase the confrontational nature of the encounter with the police. *Harris*, 228 Ill. 2d at 248. As noted in *Harris*, we would be presented with quite a different situation if defendant had refused to give his identification to Collins and the officer had insisted that defendant comply. *Harris*, 228 Ill. 2d at 249.

### 4. Attenuation

Having concluded that the warrant check on defendant was reasonable, we need not address whether intervening probable cause attenuated any taint arising from any illegal detention of defendant.

For these reasons, the judgment of the circuit court of Kendall County is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

ZENOFF, P.J., and HUDSON, J., concur.